IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2014 Session

# COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY, ET AL. v. STATE OF TENNESSEE, ET AL.

**Appeal from the Tennessee Claims Commission**
**No. X20120824    Robert N. Hibbet, Commissioner, Tenn. Claims Commission**
**(Middle Division)**

---

## No. M2014-00527-COA-R3-CV - Filed January 26, 2015

---

Two South Carolina insurance companies challenged their Tennessee retaliatory tax assessments. The Tennessee Claims Commission held that the Department of Commerce and Insurance did not calculate the South Carolina tax burden correctly because it did not include reimbursements received by the insurance companies from South Carolina's Second Injury Fund. The Commission also denied the Department's motion to strike portions of an affidavit. The Department appealed. We find that the Department's calculation of the South Carolina tax burden was correct and reverse that decision of the Claims Commission. We affirm the Commission's denial of the Department's motion to strike.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission**
**Reversed in Part, Affirmed in Part**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; and Jonathan N. Wike, Senior Counsel, for the appellant, State of Tennessee.

G. Michael Yopp and Christopher A. Wilson, Nashville, Tennessee, for the appellees, Companion Property and Casualty Insurance Company and Companion Commercial Insurance Company.

OPINION

TENNESSEE'S RETALIATORY TAX LAW

This case involves Tennessee's retaliatory tax law, Tenn. Code Ann. § 56-4-218(a).

> Generally, such statutes provide that whenever the laws of a particular state impose greater burdens and limitations upon companies organized in the enacting state, and doing business in such other state, than are imposed by the laws of the enacting state upon foreign companies doing business in that state, then the same burdens and prohibitions imposed by the foreign state will be imposed by the enacting state upon such companies of the foreign state.

43 AM. JUR. 2D *Insurance* § 54 (2014). "[T]he principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes." *W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 668 (1981).

Tennessee's retaliatory tax law, Tenn. Code Ann. § 56-4-218(a), states in pertinent part:

> When, by the laws of any other state or foreign country, any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon Tennessee insurance companies doing business in the other state or foreign country, or upon their agents in the other state or foreign country, that are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon the insurance companies of the other state or foreign country doing business in this state, or that might seek to do business in this state, or upon their agents in the state, so long as the laws continue in force, the same premium or income or other taxes, or fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions and restrictions of whatever kind shall be imposed upon the companies of the other state or foreign country doing business in this state, or upon their agents in this state.

SOUTH CAROLINA LAW

In South Carolina, insurance companies fund the Second Injury Fund through assessments calculated pursuant to S.C. Code Ann. § 42-7-310(d)(2), which provides in

pertinent part:

> Each carrier shall make payments to the fund in an amount equal to that proportion of one hundred thirty-five percent of the total disbursement made from the fund during the preceding fiscal year less the amount of net assets in the fund as of June thirtieth of the preceding fiscal year which the normalized premium of each carrier bore to the normalized premium of all carriers during the preceding calendar year.

The assessment rate varies from year to year. The insurance company pays the injured employee directly and receives reimbursement from the Second Injury Fund. S.C. Code Ann. §§ 42-9-400, 410.[1]

FACTS AND PROCEDURAL HISTORY

Champion Property and Casualty Insurance Company and Champion Commercial Insurance Company (collectively known as "Claimants") are South Carolina-domiciled insurance companies that provide property, casualty, and workers' compensation coverage to customers both inside and outside of Tennessee. The Tennessee Department of Commerce and Insurance ("the Department"), after auditing Claimants' tax returns for 2009, determined that Claimants had not self-reported assessments for the South Carolina Second Injury Fund, which the Department determined should have been included as part of the retaliatory tax calculation. For tax years 2010 and 2011, Claimants listed the South Carolina Second Injury Fund assessments in its tax returns, paying the 2011 tax liability under protest.

Claimants filed a complaint on August 24, 2012, with the Tennessee Claims Commission seeking a refund of retaliatory taxes paid under protest for the 2011 tax year. They claimed that the Department failed to take into account the effect of South Carolina's Second Injury Fund "reimbursements" in determining the applicable burden imposed on Tennessee insurance companies by South Carolina for retaliatory tax purposes.

The Claimants and the Department filed cross-motions for summary judgement. After a hearing on the motions, the Claims Commissioner granted the Claimants' motion and denied the Department's motion. The Commissioner determined that the Second Injury Fund assessments "do not constitute a classic tax imposed pursuant to a set rate." "The effective assessment rate itself," stated the Commissioner, "is a variable dependent upon the gross paid losses and Second Injury Fund reimbursements received by all insurance providers operating within South Carolina." The Commissioner found that Claimants, over the past ten years,

---

[1]The South Carolina Second Injury Fund has been phased out. S.C. Code Ann. § 42-7-320.

3

had actually "paid less in South Carolina Second Injury Fund Assessments than they receive in reimbursements, resulting in no net burden." Therefore, the Commission held that the Department "has clearly miscalculated the burden imposed by the South Carolina Second Injury Fund . . . ." The Department appealed.

STANDARD OF REVIEW

Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law on the undisputed facts. TENN. R. CIV. P. 56.04. Where the facts are undisputed, this court reviews the grant of summary judgment de novo with no presumption of correctness. *City of Tullahoma v. Bedford Cnty.,* 938 S.W.2d 408, 412 (Tenn. 1997). This matter involves a question of law.

ANALYSIS

The Claims Commissioner seemed to indicate that the South Carolina assessments are not part of the Tennessee retaliatory tax calculation because the assessments "do not constitute a classic tax imposed pursuant to a set rate." However, the Tennessee retaliatory tax statute is much broader than a "classic tax." It applies to "any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions" that "are imposed upon Tennessee insurance companies doing business in the other state." Tenn. Code Ann. § 56-4-218(a).

Similarly, Claimants maintain that the South Carolina assessments are "a mere allocation of a finite burden among insurance companies operating within South Carolina based upon prior-year reimbursements and direct losses," and contend that Tennessee is trying to transform the assessments into a tax. We do not see it that way. A burden need not be a "tax" to fall within the parameters of Tennessee's retaliatory tax. The language of Tenn. Code Ann. § 56-4-218(a) is sufficiently broad to encompass almost any burden imposed by another state upon a Tennessee insurance company, including the assessment at issue in this case.[2]

---

[2]Tennessee case law notes the difference between a tax and a fee:

A tax is a revenue raising measure levied for the purpose of paying the government's general debts and liabilities. A fee is imposed for the purpose of regulating a specific activity or defraying the cost of providing a service or benefit to the party paying the fee.

*City of Tullahoma,* 938 S.W.2d at 412 (citations omitted).

4

The main focus of this case is on the calculation of the burden imposed on insurance companies in South Carolina. In conducting the calculation, we must keep in mind that the issue under the Tennessee retaliatory tax statute is whether any taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon Tennessee insurance companies doing business in South Carolina that are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon the insurance companies of South Carolina doing business in Tennessee.

When the Department determined that the South Carolina Second Injury Fund assessments should be included for purposes of computing whether a retaliatory tax was owed, those assessments were calculated by using South Carolina's formula for Second Injury Fund assessments. The Department calculated what Claimants would owe as if each company did the same amount of business in South Carolina as it did in Tennessee.

Claimants dispute the calculation for several reasons. First, they point to the fact that in South Carolina insurers "remain responsible for making second injury payments." South Carolina law provides Claimants with reimbursements from the Second Injury Fund for the amounts Claimants paid for qualifying injuries that occurred before July 1, 2008. S.C. Code Ann. § 42-7-320(B). Claimants maintain that these reimbursements should be factored into the calculation to reduce or even eliminate[3] the burden of the assessments. The Claims Commissioner agreed, stating that "the logic behind Claimant's [sic] assertion is obvious."

This case is similar to *Commerce & Industry Insurance Company v. Department of Treasury*, 836 N.W.2d 695 (Mich. Ct. App. 2013). In that case, Michigan was evaluating New York's workers' compensation statutes to determine if assessments against the insurance companies were to be included in Michigan's computations of retaliatory taxes. *Commerce & Industr. Ins. Co. v. Dept. of Treasury*, 836 N.W.2d at 698. Insurance companies in New York were allowed to charge their policy holders a surcharge in an attempt to offset or recover the assessments.[4] *Id*. at 704. The New York assessments and surcharges were separate payments subject to separate calculations. *Id*. The New York assessments did not necessarily match the surcharges. *Id*. (citing *Selective Ins. Co. of Am. v. N.Y. Workers' Comp. Bd.*, 953 N.Y.S.2d 368, 372 (N.Y. App. Div. 2012)). The Michigan court found that the New York assessments were to be included in calculating the burden imposed by New York. *Id*. The court did not reduce the assessment to be included in the

---

[3]Both Claimants received more in reimbursements than they paid in assessments.

[4]Thus, one could argue that the assessments were really against the policy holders and the insurance companies were just a conduit for payment.

Michigan retaliatory tax by the amount of the surcharges.

In this case, the South Carolina Second Injury Fund reimbursements are paid to the insurance companies without regard to the amount of the assessment. S.C. Code Ann. § 42-9-400(a). Thus, they do necessarily match.[5] The assessment is expressly made a debt of the insurance company. S.C. Code Ann. § 42-7-310(d)(2). The assessments are, in our opinion, separate from the reimbursements.

Tennessee's retaliatory tax statute is concerned with "taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions . . . imposed upon Tennessee insurance companies doing business in the other state . . . ." Tenn. Code Ann. § 56-4-218(a). It does not address itself to the other state's statutes which do not impose a burden on Tennessee insurance companies. To hold otherwise would be to extend the statute beyond the natural and ordinary meaning of its terms. *See Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977) (The intent of a statute "is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language.").

Our view of Tenn. Code Ann. § 56-4-218(a) is buttressed by comments by our Supreme Court:

> the retaliatory or reciprocity provision . . . is a mandatory requirement that the same amount of tax be levied by the Commissioner upon a Kentucky Insurance Company doing business in Tennessee as Kentucky would levy upon a Tennessee Company doing business in Kentucky. This section applies to the levy of tax and nothing else, and means simply that, for example, if Kentucky levies a four per cent gross premium tax upon a Tennessee company instead of a two per cent gross premium tax, then Tennessee will likewise levy a four per cent gross premium tax upon a Kentucky company rather than a two per cent tax, as is provided by statute. When this equalization of the levy has thus been performed all requirements of this section . . . have been met.

*Williams v. Thomas Jefferson Ins. Co.*, 385 S.W.2d 908, 911 (Tenn. 1965); *see also Republic Ins. Co. v. Oakley*, 637 S.W.2d 448, 450 (Tenn. 1982) ("[A] determination whether or not retaliatory taxes are called for is to be based solely upon a comparison of the basic tax rate of the two states in question."). Claimants attempt to distinguish these cases by arguing that

---

[5]This makes sense because the reimbursements are not for the assessments, but for claims paid by the insurance companies that are covered by the Second Injury Fund.

they addressed optional reductions in taxes due to investments, whereas this matter involves mandatory reimbursements. We believe the principle announced in these cases is broader than the Claimants maintain. Under the retaliatory tax statute, it is the levy, or burden, imposed that is examined, not other statutes that may operate to reduce the effect of the burden imposed on individual companies. Therefore, the assessments should not be reduced or eliminated by the reimbursements. The same principles also apply to gross paid losses.

Claimants also propose that the calculation of the Tennessee retaliatory tax must include a recalculation of the South Carolina tax assessed because "[u]nder the immutable laws of mathematics, the addition of another insurer, even a hypothetical one, into this calculation results in different assessment amounts being imposed upon all insurers in South Carolina due to the presence of additional direct losses and prior-year reimbursements attributable to the additional insurer."[6] We do not think Tennessee is required to recalculate

---

[6]The logical extent of Claimants' argument was expressed by Claimants' counsel at the hearing before the Claims Commissioner:

> to really do a fair calculation in the world of the hypothetical, which is what we're operating in, they [Tennessee] also need to look at how many other states out there are assessing retaliatory taxes against South Carolina companies. How many of those states are thus then having to assume that more hypothetical companies are going to operate down there? It goes on and on . . . .

> How many other hypothetical companies do we have to factor into this equation?

> The second prong, when we're dealing with this type of a hypothetical scenario, is for all those hypothetical companies operating out there, you have to determine the amount of Second Injury Fund reimbursements that each of those companies would be entitled to. That goes into the enumerator of the calculation to determine the rate.

> Once again, you have to look at how many South Carolina companies are being assessed for retaliatory tax in Tennessee. That's a whole host of hypothetical companies where you've got to look at their reimbursements that they would be entitled to under the Second Injury Fund for the prior year. Then you look at all the other *states:* How many of them are assessing retaliatory tax? How many hypothetical companies are there? How much in South Carolina Second Injury Fund reimbursements are they entitled to? All of that has to be put into this fraction to determine the rate.

> The State has not done that. They simply look at what's the rate that's been determined in South Carolina based on the companies actually operating there, without even going so far as to include factors attributable to the Plaintiffs which would be factored as part of the hypothetical companies that we do now know about.

> Once again, all of this information really constitutes an overwhelming burden and ultimately

the South Carolina rates by factoring in hypothetical companies. All Tennessee must do is calculate what Claimants would owe if each company did the same amount of business in South Carolina as it did in Tennessee. Claimants' reliance on the so-called "immutable laws of mathematics" proposes that we venture into a land of tax rate fantasy where South Carolina's assessments are based on numbers that are not grounded in the real world. As Claimants' counsel admitted, such calculations, to the extreme extent they think necessary, are probably not possible.[7] If it could be accomplished, such a trip into "Tax Wonderland" would, incidently, have the effect of reducing Claimants' tax liability somewhat.[8] We decline to crawl down Claimants' rabbit hole. Tennessee's retaliatory tax statute merely requires a comparison of tax burdens using existing numbers.

Claimants assert that the Department's "arbitrary" application of the Tennessee retaliatory tax violates the Equal Protection and Due Process Clauses of the United States Constitution. Claimants view the Department's computation of the South Carolina tax burden as arbitrary because it does not take the reimbursements into account. Since we have determined that the reimbursement should not be considered, the Department's calculations are correct and there is no constitutional violation.

Finally, the Department argues that the Claims Commissioner abused his discretion when he denied[9] the State's motion to strike paragraphs 13 through 18 of Jeffrey Brown's affidavit. These paragraphs address the South Carolina calculations that must be made in order to compare South Carolina's burden with Tennessee's burden, such as the calculation of assessments, the assessment rate, normalized premiums, and the use of fictional Tennessee companies. Not surprisingly, Mr. Brown concludes that the way the Department calculated the South Carolina burden is incorrect. The Department argues that the statements in these paragraphs are legal conclusions and do not come from personal knowledge.

We review the denial of the motion to strike under the abuse of discretion standard.

results in the inability to actually determine the burden imposed by South Carolina unless you can obtain this information.

Any Second Injury Fund burden or rate calculation that ignores this information is necessarily arbitrary . . . .

[7]See footnote 6.

[8]Thus, Claimants' theory is consistent with the Duchess's admittedly odd comment in Lewis Carroll's *Alice in Wonderland*, "The more there is of mine, the less there is of yours."

[9]The order of the commissioner regarding the State's motion to strike does not appear in the record. Both sides agree that the motion was denied. Neither side states why it was denied.

*Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005) ("We review the trial court's decision to admit or exclude evidence by an abuse of discretion standard."); *see also Pelts v. Int'l Med. Servs. Corp.,* No. W2002-00388-COA-R3-CV, 2003 WL 22071462, at *8 (Tenn. Ct. App. Aug. 28, 2003) ("Appellate review of a motion to strike is under the deferential 'abuse of discretion' standard."). An abuse of discretion occurs when a trial court "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001) (quotation and citation omitted). We find no abuse of discretion in the Commissioner's decision.

CONCLUSION

We hold that the Department was correct in excluding the reimbursements from the calculation of South Carolina's burden for retaliatory tax purposes. Consequently, we reverse the Claims Commission's decision in this regard. We affirm the Claims Commission's decision to deny the Department's motion to strike portions of the Brown affidavit.

The case is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the Claimants, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE