# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN CHARITABLE GAMING
ASSOCIATION, AIM HIGH PROCEEDS, LLC,
ALL 4 PLAY, LLC, RIVER LOUNGE,
MICHIGAN JAYCEES, KIWANIS CLUB OF
HASTINGS, VETERANS OF FOREIGN WARS
OF THE UNITED STATES POST #702, SOUTH
LYON POST 338 AMERICAN LEGION,
ALLENDALE LIONS CLUB, MICHIGAN PUG
RESCUE, GRANT ATHLETIC BOOSTERS
CLUB, AMERICAN GI FORUM DETROIT,
TEAM DIAMOND BMX, GOLDEN
RETRIEVER RESCUE OF MICHIGAN, and A-1
BINGO SUPPLIES & GAMES,

        Plaintiffs-Appellees,

v

STATE OF MICHIGAN, GAMING CONTROL
BOARD, and GAMING CONTROL
BOARD/EXECUTIVE DIRECTOR,

        Defendants-Appellants.

FOR PUBLICATION
May 28, 2015
9:05 a.m.

No. 323410
Court of Claims
LC No. 14-000112-MZ

Before: JANSEN, P.J., and METER and BECKERING, JJ.

BECKERING, J.

Defendants, the State of Michigan, Gaming Control Board, and Gaming Control Board/Executive Director, appeal as of right the order of the Court of Claims granting summary disposition under MCR 2.116(C)(10) to plaintiffs, Michigan Charitable Gaming Association, *et al.*, and enjoining recently promulgated administrative rules governing "millionaire parties"—a form of casino-style charitable gambling. We reverse the ruling of the Court of Claims, vacate the injunction, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal concerns administrative rules that went into effect on May 14, 2014, and the process by which those rules were promulgated. After conducting an investigation into

-1-

millionaire parties, Richard Kalm, the Gaming Control Board Executive Director, and the Gaming Control Board (the agency), concluded that stricter regulations were necessary. In accordance with the Administrative Procedures Act, MCL 24.201 *et seq.* (APA), the agency filed a request for rule-making authority with the Office of Regulatory Reinvention (ORR) pursuant to MCL 24.239 to promulgate new rules to govern millionaire parties. Upon ORR granting the request, the agency submitted a set of proposed rules, which ORR approved on September 20, 2013. Thereafter, the agency submitted a regulatory impact statement and a cost-benefit analysis, which were approved on October 8, 2013. The Legislative Services Bureau (LSB) returned the rules, with edits, on November 4, 2013, and the rules were resubmitted to ORR with a draft public hearing notice. On November 22, 2013, a public hearing was held.

Based on comments made at the public hearing, the agency made several changes to the proposed rules that would lessen the regulatory burden on the industry. After certification from ORR and LSB, the agency submitted the rule set to the Legislature's Joint Committee on Administrative Rules (JCAR). JCAR held a hearing attended by the agency and members of the public. Following the hearing, JCAR Chair, Senator John Pappageorge, suggested that the rules be withdrawn so further changes could be made to address concerns raised by the public. Kalm and Pappageorge agreed that if the rules were withdrawn, amended, and resubmitted, JCAR would not object to the rules, and they would go into effect. After withdrawing the rules, the agency made the following changes that affected 3 of the 50 proposed rules:

1. The Executive Director was authorized to grant up to two millionaire party licenses per day per location instead of one;

2. All expenses had to be necessary and reasonable and could not exceed 45% of the gross profits from an event, instead of 35%; and

3. The rule requiring a charity to conduct its millionaire party in its county or adjacent county was eliminated.

According to defendants, these changes were based on public comment.

Thereafter, the agency resubmitted the 2 remaining altered rules and the 47 unaltered rules to JCAR, along with an amended agency report to reflect the changes. Once again, the rules were certified by LSB and ORR. After JCAR did not take action within the time period for doing so, the rules were submitted to the Secretary of State on May 14, 2014. ORR filed the rules with the Office of the Great Seal on that same day. The rules were subsequently published in the Michigan Register on June 1, 2014.

The withdrawal, changes, and resubmission process in the preceding paragraph serve as the basis for this appeal. Specifically, plaintiffs contend that pursuant to MCL 24.245a(7), the rules could not be amended after they were withdrawn from consideration by JCAR. Defendants contend that the APA provides for the very procedure implemented in this case.

On May 22, 2014, plaintiffs initiated the instant proceedings by filing a complaint in the Court of Claims. Pertinent to this appeal, they alleged that the agency failed to comply with Sections § 241, § 242, and § 245 of the APA with respect to the amended rules. They claimed that the agency failed to hold a public hearing on the new rules and that the agency failed to issue

a new regulatory impact statement or small business impact statement. In addition to filing their complaint, plaintiffs moved the Court of Claims for a preliminary injunction. On May 30, 2014, the Court of Claims issued a preliminary injunction enjoining the enforcement of the new rules, finding, in pertinent part, that plaintiffs were likely to succeed on the merits of their challenge.

On July 10, 2014, plaintiffs filed a motion for summary disposition under MCR 2.116(C)(10). Defendants filed a cross-motion for partial summary disposition under MCR 2.116(C)(10), asserting that the rules were properly promulgated. They contended that considering the text of the APA as a whole, the act does not require an agency to hold a second period of public comment or prepare a second regulatory impact statement before resubmitting amended rules to JCAR. Defendants argued that if the Legislature had intended to require an agency to hold a second public hearing or submit a second regulatory impact statement before resubmitting rules to JCAR, it would have included such language in the statute. Defendants argued that the only rational reason for the withdrawal-and-resubmission provision is to allow an agency to make changes in response to JCAR suggestions. As an alternative, defendants argued that even if plaintiffs were correct in their interpretation of the APA, only 3 of the proposed 50 rules had been amended, so the remaining 47 rules were properly promulgated and should be upheld.

On August 7, 2014, the Court of Claims granted plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10), finding the promulgated rules were invalid, and dismissing as moot the remainder of plaintiffs' challenges. The court analyzed MCL 24.245a, which provides:

> (7) An agency may withdraw a proposed rule under the following conditions:
>
> (a) With permission of the committee chair and alternate chair, the agency may withdraw the rule and resubmit it. If permission to withdraw is granted, the 15-session-day time period described in subsection (1) is tolled until the rule is resubmitted, except that the committee shall have at least 6 session days after resubmission to consider the resubmitted rule.
>
> (b) Without permission of the committee chair and alternate chair, the agency may withdraw the rule and resubmit it. If permission to withdraw is not granted, a new and untolled 15-session-day time period described in subsection (1) shall begin upon resubmission of the rule to the committee for consideration.

The court reasoned that MCL 24.245a(7)(a)'s reference to "it" with regard to the rule that is withdrawn and can be resubmitted, "grammatically refers to the proposed rule that the agency withdrew." This meant that a rule that was resubmitted under the statute had to be the same as the rule that had been originally submitted to JCAR. As it indicated in granting a preliminary injunction, the court explained that it was "not persuaded by defendants' argument that an agency may withdraw a rule, change it, and 'resubmit' the changed rule to JCAR under § 45a(7)." Reviewing the rule-making process under the APA, the court agreed with defendants that the APA allows an agency to make changes in proposed rules during the proceeding, such as after the public hearing, as MCL 24.245(2) expressly specifies changes in the proposed rules

-3-

made after the public hearing. However, the court opined, "that does not mean that the APA allows the changes to be made at any time the agency wants."

In reaching its conclusion, the court examined the history of the APA provisions governing withdrawal and resubmission and concluded that the act's history supported its holding. Prior to 1999 PA 262, which enacted the provision at issue in this case, MCL 24.245(11) expressly permitted resubmission of a rule "*with changes following a committee meeting on the proposed rule or with minor modifications*." (Emphasis added). The former version of the statute also specified that "[a] resubmitted rule is a new filing and subject to this section but is not subject to further notice and hearing . . . ." The court further noted that a legislative bill analysis explained that the 1999 amendments to the APA were designed to eliminate the former process for JCAR approval and replace it with an entirely new process. With this backdrop in mind, the court reasoned that the Legislature, in enacting 1999 PA 262, did not intend to allow an agency to withdraw, modify, and resubmit rules under MCL 24.245a(7). "Rather, the statute requires either a resubmission of 'it' (i.e., the same rules) or re-initiation of the processing method."

The court found unpersuasive affidavits from the manager of ORR and the deputy director for the Department of Licensing and Regulatory Affairs, which is the department in which ORR is housed. The affidavits contained statements by the individuals noted above indicating that, in past practice, ORR applied MCL 24.245a(7) in line with defendants' interpretation of the statute. The court stated that the opinions of the affiants were not helpful, because "[t]he duty to interpret and apply the law has been allotted to the courts, not to the parties' expert witnesses." *Hottman v Hottman*, 226 Mich App 171, 179; 572 NW2d 259 (1997), and because the affiants did not provide any legal authority or analysis to support their opinions.

The court also rejected defendants' argument that the 47 unchanged rules were properly promulgated stating, "There is no dispute the rules were processed as a set from the inception. Thus, the Gaming Control Board did not submit 50 regulatory impact statements and cost-benefit analyses; rather, a single one was prepared that addressed the rule set . . . ." The court rejected defendants' invitation to view the set as a single rule for purposes of compliance with the APA's rulemaking requirements such as a regulatory impact statement, and then view the rules individually when evaluating the ramifications of the set. The court was not persuaded that "the variable approach that defendants propose is compatible with the APA."

## II. STANDARD OF REVIEW

We review de novo the Court of Claims' decision on a motion for summary disposition. *Commerce & Indus Ins Co v Dep't of Treasury*, 301 Mich App 256, 263; 836 NW2d 695 (2013). We also review de novo issues of statutory interpretation. *Id.* "The primary goal of statutory construction is to give effect to the Legislature's intent." *McCormick v Carrier*, 487 Mich 180, 191; 795 NW2d 517 (2010).

> In determining the intent of the Legislature, this Court must first look to the language of the statute. The Court must, first and foremost, interpret the language of a statute in a manner that is consistent with the intent of the Legislature. As far as possible, effect should be given to every phrase, clause, and word in the statute.

The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. Moreover, when considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme. While defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme. A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. Moreover, courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute. [*Bush v Shabahang*, 484 Mich 156, 166-167; 772 NW2d 272 (2009) (citations and quotation marks omitted).]

"[I]f the language is clear and unambiguous, it is presumed that the Legislature intended the meaning expressed in the statute. Judicial construction of an unambiguous statute is neither required nor permitted." *McCormick*, 484 Mich at 191-192.

In addition, "[t]he construction of a statute by a state administrative agency charged with administering it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons." *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 129; 807 NW2d 866 (2011) (citation and quotation marks omitted). See also *Younkin v Zimmer*, 497 Mich 7, 10; 857 NW2d 244 (2014) (giving deference to the interpretations of agency officials who were acting in their official capacities at the time they gave meaning to the term at issue). However, such an interpretation is not binding on the courts and cannot conflict with the intent of the Legislature as expressed in the plain language of the statute. *Mich Farm Bureau*, 292 Mich App at 130. "Thus, even a longstanding administrative interpretation cannot overcome the plain language of a statute." *Id.*

## III. ANALYSIS

### A. OVERVIEW OF THE RULE-MAKING PROCESS

The APA governs the creation of "rules" which include agency regulations. See MCL 24.207. An agency's failure to follow the process outlined in the APA renders a rule invalid. See *Faircloth v Family Independence Agency*, 232 Mich App 391, 402; 591 NW2d 314 (1998). See also MCL 24.243(1) (mandating "compliance with" the provisions of § 242 concerning public notice and "substantial compliance" with § 241, which concerns the content of the notice, transmission of copies of the notice to each person who requested advance notice, and certain procedures for public hearings). To give context to our analysis, we briefly review the rule-making process set forth in the APA.

An agency wishing to create a rule must first make a request for rule-making authority to ORR. MCL 24.239. After receiving rule-making approval, the agency must submit a draft of the proposed rules to ORR, which gives approval to proceed with a public hearing. MCL

24.239a(1). If ORR grants approval for a public hearing, it "shall immediately provide a copy of the proposed rules to" JCAR. MCL 24.239a(2). Before adopting a rule, an agency or ORR must provide notice of a public hearing and offer "an opportunity to present data, views, questions, and arguments." MCL 24.241(1). In addition to providing notice to the public, the agency must give notice of the public hearing to "the committee,[1]" which may in turn, "meet to consider the proposed rule, take testimony, and provide the agency with the committee's informal response to the rule." MCL 24.242(5). The agency must also send the proposed rules to LSB for approval. MCL 24.245(1). At least 28 days before the public hearing, the agency must prepare a regulatory impact statement and small business impact statement and submit them to ORR and JCAR. MCL 24.245(3)-(4).

Following the public hearing and before the agency proposing the rule has formally adopted[2] the rule, the agency must prepare a report "containing a synopsis of the comments contained in the public hearing record, a copy of the request for rule-making, and the regulatory impact statement . . . ." MCL 24.245(2). At this point in the process, the APA acknowledges that the agency may make changes to the rules following the public hearing. Specifically, MCL 24.245(2)[3] states that in the agency report noted above, "the agency shall describe any changes in the proposed rules that were made by the agency after the public hearing."[4] ORR is required to submit to JCAR copies of the rule, agency reports containing the request for rule making, a copy of regulatory impact statements, and certificates of approval from LSB and ORR. MCL 24.245(2). Further, ORR must electronically submit to JCAR the documents noted above, plus any agency reports prepared in accordance with the statute. MCL 24.245(2). The agency, too,

---

[1] As used in the APA, "the committee" refers to JCAR. MCL 24.203(4).

[2] " 'Adoption of a rule' " means that step in the processing of a rule consisting of the formal action of an agency establishing a rule before its promulgation." MCL 24.203(1).

[3] Section 245(2) provides, in pertinent part:

> The office of regulatory reinvention shall transmit by notice of transmittal to [JCAR] copies of the rule, the agency reports containing the request for rule-making, a copy of the regulatory impact statement, and certificates of approval from the legislative service bureau and the office of regulatory reinvention. The office of regulatory reinvention shall also electronically submit to [JCAR] a copy of the rule, any agency reports required under this subsection, any regulatory impact statements required under subsection (3), and any certificates of approval required under subsection (1). The agency shall electronically transmit to the committee the records described in this subsection within 1 year after the date of the last public hearing on the proposed rule unless the proposed rule is a resubmission under section 45a(7).

[4] The act does not contain an affirmative, express statement that the agency may make changes after the public hearing. However, by mandating that the agency, at this point "shall describe any changes in the proposed rules that were made by the agency after the public hearing[,]" the APA acknowledges that the agency has authority to make changes at this point in the process.

must electronically submit the records described above within one year of the date of the last public hearing on the proposed rule "unless the proposed rule is a resubmission under section 45a(7)[5]."

After it receives the notice of transmittal specified in the preceding paragraph, JCAR is to take one of three actions within 15 session days. See MCL 24.245a(1)-(2). The first such option is to object to the rule. MCL 24.245a(1) provides, in pertinent part, "[e]xcept as otherwise provided in subsections" 245a(7) and (9),[6] after JCAR receives the "notice of transmittal," it has 15 session days to consider the rule and to object to the rule by filing a notice of objection, which must be approved by a concurrent majority of committee members. MCL 24.245a(1). JCAR can only object to a rule if it determines that one or more statutorily enumerated conditions exist. MCL 24.245a(1)(a)-(g).[7] If JCAR objects within 15 session days, "the committee chair, the alternate chair, or any member of the committee shall cause bills to be introduced in both houses of the legislature simultaneously. Each house shall place the bill or bills directly on its calendar." MCL 24.245a(3). The bills referenced in the statute must contain one or more of the following: (a) a rescission of the rule; (b) a repeal of the statutory provision authorizing the rule; or (3) a bill staying the effective date of the proposed rule for up to one year. MCL 24.245a(3)(a)-(c).

As to JCAR's remaining options, it can elect to waive, by concurrent majority, the 15 session days. MCL 24.245a(1). If JCAR does so, ORR may immediately file the rule with the Secretary of State, and the rule will take effect upon filing. MCL 24.245a(2). Alternatively, if

---

[5] Section 45a(7) refers to MCL 24.245a(7), the section of the statute at issue.

[6] Section 245a(9) requires an agency to withdraw "any rule pending before the committee at the final adjournment of a regular session held in an even-numbered year and resubmit that rule. A new and untolled 15-session-day time period described in subsection (1) shall begin upon resubmission of the rule to the committee for consideration."

[7] MCL 24.245a(l) provides as follows:

The committee may only approve a notice of objection if the committee affirmatively determines by a concurrent majority that 1 or more of the following conditions exist:

(a) The agency lacks statutory authority for the rule.

(b) The agency is exceeding the statutory scope of its rule-making authority.

(c) There exists an emergency relating to the public health, safety, and welfare that would warrant disapproval of the rule.

(d) The rule conflicts with state law.

(e) A substantial change in circumstances has occurred since enactment of the law upon which the proposed rule is based.

(f) The rule is arbitrary or capricious.

(g) The rule is unduly burdensome to the public or to a licensee licensed by the rule.

JCAR does nothing within 15 session days, ORR may file the rule with the secretary of state, and the rule will go into effect. MCL 24.245a(2).

## B. WITHDRAWAL UNDER § 245a(7)

As noted, an exception to MCL 24.245a(1) exists when the agency elects to withdraw a submission under MCL 24.245a(7). This is the section of the statute at issue in the instant case. MCL 24.245a(7) provides:

An agency may withdraw a proposed rule under the following conditions:

(a) With permission of the committee chair and alternate chair, the agency may withdraw the rule and resubmit it. If permission to withdraw is granted, the 15-session-day time period described in subsection (1) is tolled until the rule is resubmitted, except that the committee shall have at least 6 session days after resubmission to consider the resubmitted rule.

(b) Without permission of the committee chair and alternate chair, the agency may withdraw the rule and resubmit it. If permission to withdraw is not granted, a new and untolled 15-session-day time period described in subsection (1) shall begin upon resubmission of the rule to the committee for consideration.

Here, it is undisputed that the agency sought and received ORR approval, produced a regulatory impact statement, held a public hearing, sought and received approval from LSB, and submitted the proposed rules to JCAR. The agency withdrew the rules from JCAR with permission in accordance with MCL 24.245a(7)(a). The agency subsequently removed one of the rules in the rule set and amended two others before "resubmitting" the entire rule set to JCAR, along with an amended agency report. The only dispute is whether withdrawing a rule and resubmitting an amended version of that rule is permitted under § 245a(7).

## C. WHETHER CHANGES ARE PERMITTED AFTER WITHDRAWAL

Upon our review of the plain language of the provision at issue and the rule-making process as a whole, we find that an agency may submit an amended version of a rule upon resubmission under § 245a(7). At the outset, we reject plaintiffs' contentions that § 245a(7)(a)'s use of the phrase, "the agency may withdraw *the rule* and resubmit *it*" supports their interpretation of the act. Plaintiffs make much of this phrase, contending that the use of the word "it" refers to "the rule" that was submitted, meaning that the resubmitted rule has to be "it," i.e., the rule that was originally submitted, and cannot include any changes to the rule. Reading the APA as a whole to provide context, we do not agree. Section 245a(7) states that "a proposed rule" may be withdrawn, and that if "the rule" is withdrawn, the agency may resubmit "it." The APA uses the words "a rule," "the rule," "a proposed rule" or "the proposed rule" to refer to a rule as it moves through the rulemaking process. Given that these terms are used interchangeably throughout the act, we do not ascribe significance to the fact that § 245a(7) speaks of withdrawing "the rule" and resubmitting "it." We note that in other contexts, the act uses the term "rule" and "proposed rule" to describe a rule both *before and after* it has been amended by the agency. Notably, MCL 24.245(2) provides that "before the agency proposing *the rule* has formally adopted *the rule*" it shall prepare an agency report containing, among other

matters, "any changes in the *proposed rules* that were made by the agency after the public hearing." (Emphasis added). The statute does not state that the agency proposing the rule shall, after making changes in response to comments received at the public hearing, prepare an agency report on the *amended* or *altered* rule. Similar to § 245(2) and consistent with the overall tenor of the act, § 245a(7) indicates that "the rule" remains "the rule" or the "proposed rule" after resubmission. This language does not foreclose changes by the agency. We find the interpretation proposed by plaintiffs to be over-literal and not in conformance with the context of the APA. Thus, we find that the Legislature's use of the word "it" in § 245a(7)(a) refers not only to "the rule" as originally submitted, but also, potentially, to an amended or altered rule, provided that the agency submitting the rule chooses to amend it in a manner similar to that described in this opinion. See *Bush*, 484 Mich at 167 (when construing a statute, a reviewing court is to read the language "in the context of the entire legislative scheme" and in such a manner as to "ensure[]that it works in harmony with the entire statutory scheme.").

Moreover, we find nothing in the plain language of § 245a that would prohibit an agency from making changes to a rule upon resubmission. While the act requires strict compliance or substantial compliance with certain requirements under the act—such as notice, MCL 24.243— the act does not precisely describe the resubmission process. Indeed, § 245a(7) is silent on the issue of changes to the proposed rules upon resubmission. The purpose of that section is to describe the manner in which a proposed rule may be withdrawn—being with or without permission of the committee—and based upon the manner selected, the time in which JCAR has to respond to the rule after it has been resubmitted. The section contains no limit on the authority of the agency. Contrastingly, and as discussed in more detail *infra*, the APA expressly recognizes the authority of an agency to make changes to proposed rules following a public hearing. See MCL 24.245(2). We decline to read into § 245a(7) a limitation that is not within the express language of the statute. See *Michigan Ed Ass'n v Secretary of State*, 489 Mich 194, 218; 801 NW2d 35 (2011) (citation and quotation omitted) ("[N]othing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself.").

Similarly, the APA is silent on the issue of the procedure that is to occur in a case such as this when an agency seeks to make changes to proposed rules after submission to JCAR. The act does not state that such changes can only be accomplished by re-initiating the rulemaking process. And, even assuming that it did, the act gives no guidance with regard to the point in the process at which such proposed changes must return. If we were to adopt plaintiffs' position, should we read the APA as requiring a new request for rulemaking in the event an agency wants to make changes after a rule is submitted to JCAR then withdrawn? This hardly seems advisable, considering that ORR just approved a request for rulemaking on the very subject. Likewise, it does not seem prudent to require another public hearing, as the act expressly recognizes an agency's authority to make changes following the public hearing. In sum, because the APA is silent on the procedure that should occur in the event an agency seeks to make changes upon withdrawal of a rule from JCAR, we will not read into the act such a procedure. See *Mich Ed Ass'n*, 489 Mich at 218.

In contrast to the silence concerning resubmission, we note that the APA expressly recognizes an agency's authority to make changes after the public hearing. See MCL 24.245(2). This evidences the Legislature's intent that the rulemaking process is intended to be responsive to comments and suggestions offered at the public hearing. The changes made to the rule in this

case upon resubmission were consistent with that intent, as they were responsive to public comments. The APA contemplates that rule making is a process comprised of various stages. See MCL 24.205(8) (defining "[p]rocessing of a rule" to mean "the action required or authorized by this act regarding a rule that is to be promulgated, including the rule's adoption, and ending with the rule's promulgation."). Where the APA does not expressly preclude changes upon resubmission, we see no reason for placing a temporal limit on an agency's ability to make changes after a public hearing, so long as those changes are consistent with impact statements that have already been submitted, and so long as they do not infringe upon JCAR's role in the rulemaking process. JCAR's role in the rulemaking process is, per the plain language of the APA, limited. At the time the rule is submitted or resubmitted to JCAR, § 245a requires an agency to give JCAR an opportunity to view and object to the proposed rules. JCAR can object to proposed rules by identifying one of the enumerated grounds for objection, but rulemaking authority is left to the agency. Where, as here, the agency submitted reports to JCAR describing the rules and proposed changes upon resubmission, JCAR was still permitted to exercise its function under the APA. That is, JCAR considered the rules and determined whether they were objectionable for one of the reasons listed in § 245a(1)(a)-(g). And, we note, JCAR gave its blessing to the very procedure implemented by defendants in this case. Where the procedure employed in this case was consistent with the rulemaking process outlined in the APA, was not expressly prohibited thereby, and where it was undertaken with the express blessing of JCAR, we decline to find that the process employed was in contravention of the APA's rulemaking procedures. In other words, given the nature of the rulemaking process and the agency's role in moving a rule through this process, we see no reason to impose a limit on an agency's ability to make changes to a rule such as occurred in this case.

In evaluating this issue, we note and assign significance to the context in which § 245a(7) appears in the rulemaking process. Upon the submission of a rule to JCAR, JCAR has authority to object to the proposed rule for one of seven enumerated reasons. MCL 24.245a(1)(a)-(g). It is within this context that the provision at issue, MCL 24.245a(7), comes into play, and gives an agency authority to withdraw and resubmit a rule. If the agency could not withdraw a rule, make changes, and resubmit the rule, § 245a(7) would have very little meaning in this context. Indeed, if a rule were objectionable for one of the reasons listed in § 245a(1), the agency could withdraw the rule, but could take no action, other than resubmitting a rule that was bound to be rejected. In comparison, if an agency can make changes upon resubmission, it could attempt to avoid a notice of objection. Within the context of a potential threat of a notice of objection from JCAR, it makes little sense that an agency cannot withdraw a proposed rule, make requisite changes, so long as those changes are within the regulatory impact and small business impact statements, and resubmit the proposed rule. We decline to give § 245a(7) this near trivial interpretation. See *Reed v Breton*, 475 Mich 531, 540; 718 NW2d 770 (2006) (a reviewing court is "precluded from construing" a statute "as having no meaning[.]").

Indeed, if we were to adopt the view espoused by plaintiffs, we would see little practical use for § 245a(7). If an agency is required to resubmit the exact rule that was withdrawn, § 245a(7) would be, at best, a stall tactic for an agency to attempt to convince JCAR not to raise a notice of objection in response to the rule. If the agency could not make any changes to the rule during that time, such a stall tactic would not be implemented in a way that would actually improve a rule or make it less worthy of objection. Rather, it would simply be initiated for the agency to attempt to convince JCAR not to file a notice of objection. This interpretation hardly

-10-

seems compatible with the APA's goals of promoting public participation, preventing precipitous action, and preventing the adoption of rules that are illegal or beyond the intent of the Legislature. See *Michigan State AFL-CIO v Secretary of State*, 230 Mich App 1, 21; 583 NW2d 701 (1998) (describing the purposes of the APA's rulemaking process). At worst, § 245a(7) would be but a hollow provision acting to either temporarily delay JCAR from objecting to the rule and initiating the process that ends in the rule's demise, or temporarily delaying a valid rule from taking effect. In either instance, § 245a(7) would have little meaning. We decline to interpret § 245a(7) in such a manner. See *Reed*, 475 Mich at 540.

Contrastingly, we believe that reading the statute so as to allow changes upon resubmission is consistent with the purpose of the APA. The Legislature's intent in enacting the "elaborate procedure for rule promulgation" was to "invite public participation in the rule-making process, prevent precipitous action by the agency, prevent the adoption of rules that are illegal or that may be beyond the legislative intent, notify affected and interested persons of the existence of the rules and make the rules readily accessible after adoption." *Michigan State AFL-CIO*, 230 Mich App at 21 (citation and quotation omitted). Prohibiting an agency from making changes upon resubmission could serve as a disincentive for an agency to act on public comment in order to avoid repeating the rulemaking process. On the other hand, permitting an agency to withdraw a rule that has been submitted to JCAR, make changes, and then resubmit the rule to JCAR, is more in line with the purposes of the act. Here, the agency made changes to the withdrawn rules, after and in response to public comments, and after input from JCAR. In other words, the resubmitted rules were the product of public participation in the rulemaking process. Further, the changes made by the agency are not immune from review, as § 245a(7) expressly provides that JCAR has additional time to review rules upon resubmission. See MCL 24.245a(7)(a) (giving JCAR a minimum of 6 days "after resubmission to consider the resubmitted rule"; (b) (starting "a new and untolled 15-session-day time period" when rules are withdrawn without permission).[8] The extra time afforded to JCAR ensures that resubmitted and amended rules will be subject to legislative scrutiny, as JCAR is permitted to exercise the same options set forth in §§ 245a(1) and (2) upon resubmission.

We caution, however, that the APA does not provide an agency with unfettered discretion to make *any* change it sees fit upon resubmission. As noted, an agency must prepare, before the public hearing is held, a regulatory impact statement and a small business impact statement for the proposed rule. See MCL 24.245(3). Were an agency to make such significant changes to the rule that it would be more burdensome than the proposed rule at the time the agency prepared the impact statements noted above, it may lose its character as "the rule" or "the proposed rule" under the act. Indeed, it is conceivable that the changes proposed by an agency may be so drastic in character that they render irrelevant the requisite impact statements. In such a case, the rule could change drastically enough so as to deviate from the intended process under the APA.

---

[8] The extra time afforded to JCAR after resubmission buttresses our conclusion that the agency is permitted to make changes to a proposed rule upon resubmission. Had the Legislature intended for a resubmitted rule to be the same as it was before submission, it would make little sense to afford JCAR extra time to reconsider the rule.

However, that is not what occurred in this case. Additionally, if an agency failed to inform JCAR of changes made to a rule or rules after resubmission, it could inhibit JCAR from performing its required functions under § 245a. Once again, that did not occur in the instant case. The agency made changes that were less burdensome to the affected industries and that were in accordance with the regulatory impact statements and small business impact statements. The agency made changes in response to public comments. In addition, the agency identified the changes and explained them to JCAR upon resubmission. This procedure was not novel or unique, because, as defendants bring to our attention through affidavits from two employees acting in their official capacities,[9] ORR has implemented the APA in this manner in the past. "Their interpretation is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons." *Younkin*, 497 Mich at 10. Here, "[b]ecause [ORR's] interpretation does not conflict with the Legislature's intent as expressed in the language of the statute at issue, there are no such 'cogent reasons' to overrule it." *Id.* (citation and quotation marks omitted).

In reaching this conclusion, we are mindful that 1999 PA 262 amended the APA and, among other matters, eliminated § 245(11), which provided:

> An agency may withdraw a proposed rule by leave of the committee. An agency may resubmit a rule so withdrawn or returned under subsection (9) with changes following a committee meeting on the proposed rule or with minor modifications. A resubmitted rule is a new filing and subject to this section, but is not subject to further notice and hearing as provided in sections 41 and 42.[10]

As noted by the Court of Claims, this section of the statute expressly permitted an agency to resubmit a rule "with changes following a committee meeting on the proposed rule or with minor modifications." We acknowledge that "[a] change in the statutory language is presumed to reflect a change in the meaning of the statute." *Edgewood Dev, Inc v Landskroener*, 262 Mich App 162, 167-168; 684 NW2d 387 (2004). However, such changes do not always reflect an attempt to change statutory provisions. See *Ottawa Co v Police Officers Ass'n of Mich*, 281 Mich App 668, 673; 760 NW2d 845 (2008). Here, when looking at the plain language of the existing statute, as well as the developments of § 245 as a whole, we conclude that the amendment to § 245(11) in 1999 PA 262 is not dispositive of the issue at hand. Before its amendment in 1999 PA 262, § 245(2) did not recognize an agency's authority to make changes to a proposed rule after public hearing. Indeed, the previous version of § 245(2) was silent on an agency's ability to make changes to rules. In addition, JCAR had far more authority under the previous statutory scheme. For instance, under the former version of §§ 245(6), (9), and (10),

---

[9] Defendants presented affidavits from Elizabeth Smalley, ORR manager, and Mike Zimmer, Chief Deputy Director of the Department of Licensing and Regulatory Affairs, the department in which ORR was housed.

[10] We note that the prior version of the APA expressly indicated that the resubmitted rule with changes, although it was dubbed a "new filing," was not subject to further notice or a public hearing.

JCAR had more time to consider rules, had to decide whether to "approve the proposed rule[,]" as opposed to being limited to objecting to the rule for a specified reason, and could vote to give itself more time to consider proposed rules. Furthermore, under the former version of § 245(10), if JCAR took no action on a proposed rule, the rule was returned to the agency, and the JCAR chairperson and alternate chairperson were required to cause concurrent resolutions approving the rule to be introduced in both houses of the Legislature, simultaneously. This is in contrast to current statutory scheme, where the promulgating agency has authority to make changes to proposed rules after public hearing pursuant to § 245(2), and in contrast to JCAR's limited role in either rejecting a rule for a limited list of reasons, or taking no action in regard to the rule, which essentially leads to promulgation of the rule. Given this development, we are not convinced that the Legislature's decision to eliminate language concerning an agency's authority to resubmit a proposed rule with changes is controlling. Indeed, we believe that the effect of the current version of § 245 is to shift authority toward the agency and away from JCAR. Among the authority given to the promulgating agency under § 245(2) is the authority to make changes to proposed rules after public hearing, as long as the agency "describe[s] any changes in the proposed rules that were made by the agency after the public hearing." If the agency has such authority pursuant to the plain language of the statute, we do not see fit to hamstring the agency's authority to make changes upon resubmission when such a limitation is not apparent from the plain language of the statute.

## IV. REMAINING ISSUES

Because of our resolution of this issue, we need not consider the remaining claims on appeal. However, we note that plaintiffs argue, as an alternative basis for invalidating the rules enacted in this case, that the rules were invalid because the regulatory impact statement submitted by the agency failed to meet the requirements of MCL 24.245(3).[11] This issue was raised before, but not addressed, by the Court of Claims, as it invalidated the rules on other grounds. We do not decide this issue, but note that nothing prevents the Court of Claims from addressing this matter on remand.

Reversed, vacated, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Jane M. Beckering
/s/ Kathleen Jansen

---

[11] We note that plaintiffs' challenge is to the adequacy of the information contained in the regulatory impact statement, not that the amended rules were incongruous with the impact statement as originally filed.