# STATE OF MICHIGAN

# COURT OF APPEALS

---

WAYNE CASS,

      Plaintiff/Counter-Defendant-
      Appellant/Cross-Appellee,

v

MICHIGAN STATE UNIVERSITY,

      Defendant/Counter-Plaintiff/Cross-
      Plaintiff/Third-Party Plaintiff-
      Appellee/Cross-Appellant.

and

COALITION OF LABOR ORGANIZATION AT
MSU,

      Defendant/Cross-Defendant-
      Appellee/Cross-Appellee,

and

ADMINISTRATIVE PROFESSIONAL
ASSOCIATION MEA/NEA, CLERICAL-
TECHNICAL UNION OF MSU, FRATERNAL
ORDER OF POLICE NON-SUPERVISORY
DIVISION LODGE 141, AFSCME LOCAL 999,
AFSCME LOCAL 1585, ADMINISTRATIVE
PROFESSIONAL SUPERVISORS
ASSOCIATION, INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 324, AND
INTERNATIONAL ALLIANCE OF
THEATRICAL STATE EMPLOYEES LOCAL
274,

      Third-Party Defendants/Cross-
      Appellees.

UNPUBLISHED
February 18, 2016

No. 324183
Court of Claims
LC No. 13-000159-MK

---

Before: O'CONNELL, P.J., and OWENS and BECKERING, JJ.

PER CURIAM.

-1-

This is a breach of contract action involving a contract between defendant/counter-plaintiff/cross-plaintiff/third-party plaintiff Michigan State University (MSU) and defendant/cross-defendant Coalition of Labor Organization at MSU (the Coalition). Plaintiff/counter-defendant, Wayne Cass (Cass), was a former employee and member of a union that makes up part of the Coalition. The gist of Cass's claim is that he, as a former employee, accrued certain benefits under a contract between MSU and the Coalition, and that the Coalition's decision to disburse those benefits to a group of employees that did not include him improperly divested him of this benefit. Cass appeals as of right the September 23, 2014 order of the Court of Claims granting summary disposition to MSU pursuant to MCR 2.116(C)(10) and dismissing his breach of contract claim against MSU. The court's order also dismissed Cass's claims against the Coalition for lack of subject-matter jurisdiction; however, Cass has not raised a challenge to this portion of the court's ruling. As for the cross-appeal in this case, during the pendency of Cass's lawsuit, MSU filed an interpleader action, alleging that the money to which Cass claimed entitlement was also claimed by the Coalition and the various unions that made up the Coalition and which are listed as third-party defendants.[1] The interpleader action named Cass as a counter-defendant, the Coalition as a cross-defendant, and the individual unions as third-party defendants. The September 23, 2014 order held that the Court of Claims lacked subject-matter jurisdiction over the interpleader action insofar as it involved the Coalition and the third-party defendants. The court's order dismissed MSU's claims as they pertained to the Coalition and the third-party defendants pursuant to MCR 2.116(C)(4), and dismissed as moot MSU's counterclaim against Cass. MSU cross-appeals as of right from this portion of the order.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

As noted, the subject of this dispute entails a contract between MSU and the Coalition. The Coalition is comprised of the various unions that represent MSU employees, including the International Union of Operating Engineers, of which Cass was formerly a member. Each individual union bargains and negotiates its own respective collective bargaining agreement (CBA) with MSU. However, on certain matters such as healthcare benefits, the Coalition negotiates with MSU on behalf of its member unions. Pertinent to this case, MSU and the Coalition entered into various Memoranda of Understanding (MOU) with regard to healthcare benefits. These MOU were subsequently incorporated into each individual union's CBA with MSU.

There are two MOUs that are pertinent to this case. The first MOU was entered into in 2010 and stated that it was to remain in effect from January 1, 2010 until December 31, 2013. This is often referred to by the parties as the "2010 MOU." The 2010 MOU had the purpose, among other matters, of memorializing how increases in healthcare costs would be allocated. Paragraph 4 of the 2010 MOU is the focus of this action. Paragraph 4.B recognized the possibility of increased healthcare costs in the future, and capped the costs of the employer (MSU). In particular, the MOU declared that "[d]uring the 2010/2011-plan year and in

---

[1] For the sake of brevity, the various unions will be referred to collectively as "third-party defendants," unless otherwise noted.

subsequent plan years covered by this agreement, the health plan cost increases paid by the Employer shall be limited to 5%[,]" i.e., the existing cost plus a 5 percent increase each year. While the MOU limited the amount of the cost increases that MSU would pay from 2010 through 2013, it provided the following with regard to cost increases above and below 5 percent: (1) any cost increase above 5 percent of the existing cost would be borne by the Coalition-represented employees; and (2) any cost increase less than 5 percent would "accrue." In relevant part, the MOU provided:

> During the 2011-2012 plan year, employees represented by the Coalition shall pay on a monthly, pro rata basis (based on coverage elected) any amounts that exceed the annual 5% increase in the health plan cost.

> During any plan year covered by this agreement, any amount of health care plan increase less than 5% shall accrue to the benefit of the employees represented by the Coalition as determined by the JHCC.[2] In no case shall employees receive a cash payment or base wage benefit increase as part of this paragraph.

It is the accrual in the second part of ¶ 4.B that forms the basis for Cass's arguments; he claims a vested right in the accrued funds under the 2010 MOU. During the effective dates of the 2010 MOU, MSU and Coalition-represented employees were successful in keeping the cost of annual healthcare plan increases below 5 percent. In total, this resulted in a savings[3] of $7,969,174 during this timeframe. The 2010 MOU expired, by its terms, on December 31, 2013. Effective January 1, 2014 through December 31, 2017, MSU and the Coalition entered into a successor MOU (2014 MOU). In pertinent part, the 2014 MOU stated that, due to the "effective stewardship" of the Coalition and MSU in keeping healthcare cost increases in check, the 2014 MOU would make two distributions of the "savings" accumulated under the 2010 MOU. The first distribution was made to those employees who were employed on January 1, 2014, and the second was to be made to those employees who were employed on January 1, 2015.

Cass was formerly a member of the International Union of Operating Engineers, Local 324—one of the third-party defendants in this case—as well as the chair and chief representative for the Coalition. He was involved in negotiating the 2010 MOU and he signed the document on behalf of the Coalition. Cass retired from his employment on August 29, 2012.

Cass filed a multi-count complaint in the Court of Claims against the Coalition and MSU. The complaint noted that Cass, as well as other former employees whose employment terminated before the date of the payouts set forth in the 2014 MOU, were not scheduled to receive any of the $7,969,174 accrued healthcare savings under the 2010 MOU. Cass alleged that he was an

---

[2] The "JHCC" was not defined in the 2010 MOU, but the parties have represented that this is an entity known as the "Joint Health Care Committee."

[3] Although Cass describes the healthcare savings as a "pot of money," the parties all agree that it was not, in fact, a pot of money, but rather, a separately designated accounting entry.

intended third-party beneficiary of the 2010 MOU and that he had a vested right in the healthcare savings that accrued thereunder.

MSU filed an interpleader action, stating it had no interest in the funds at issue, but acknowledging that Cass, the Coalition, and the third-party defendants claimed a right to the funds. MSU noted, however, that it believed Cass, a retiree, was not entitled to any of the accumulated funds.

On September 23, 2014, the Court of Claims granted summary disposition to MSU under MCR 2.116(C)(10), finding that Cass did not have a vested right in the funds that accrued under the 2010 MOU. The Court rejected any notion that the phrase "shall accrue," as used in the 2010 MOU created a vested right in Cass—or any employee for that matter. Instead of the word "accrue" referring to a vested right, as advocated by Cass, the Court found that the word "accrue" simply referred to the accumulation of money. The Court also found that the 2010 MOU granted discretion to the JHCC with regard to the funds, which tended to show that Cass did not have a vested right in the funds. The Court concluded that Cass was not promised anything under the 2010 MOU, citing the statement in ¶ 4.B indicating that "[i]n no case shall employees receive a cash payment . . . ." The court noted that payouts under the 2014 MOU "appear to be significant windfalls to the employees represented in that MOU, but plaintiff has not been able to point to any defined benefit in the 2010-2013 MOU that he did not receive." In short, the court concluded that Cass did not have any vested rights in the healthcare savings under the 2010 MOU, and found that all of his claims were without merit.

In addition, the Court found that it lacked subject-matter jurisdiction over Cass's claims against the Coalition,[4] and that it lacked subject-matter jurisdiction over the interpleader action. Cass appeals as of right the dismissal of his claims against MSU, and MSU cross-appeals the determination that the Court of Claims lacked subject-matter jurisdiction over the interpleader action.

## II. CASS'S APPEAL

We review de novo a decision by the Court of Claims on a motion for summary disposition. *Commerce & Indus Ins Co v Dep't of Treasury*, 301 Mich App 256, 263; 836 NW2d 695 (2013). We also review de novo the interpretation of a contract and the effect of contractual provisions. *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012).

At the outset, we note that Cass claims a breach of the 2010 MOU, a contract which is between MSU and the Coalition, and to which Cass is not a party. Cass's brief on appeal does not articulate an argument recognizing that he can only maintain a breach-of-contract claim if he can show that he was an intended third-party beneficiary of the 2010 MOU entered into by MSU and the Coalition. See MCL 600.1405; *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 427-428; 670 NW2d 651 (2003). The only time Cass even recognizes that he needs to be an intended

---

[4] Again, Cass has not challenged this ruling on appeal.

third-party beneficiary is a short reference to third-party beneficiaries in his reply brief. This Court could find his cursory treatment of his need to show intended third-party beneficiary status is tantamount to abandonment. See *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). Cass also makes little argument about how his status as a retiree affects this case.

Notwithstanding this passing treatment of intended third-party beneficiary and retiree status, the issue of whether he can show intended third-party beneficiary status and a vested right, even as a retiree, turns on whether he can establish that the 2010 MOU contains a promise undertaken directly for him during his time of employment. See *Schmalfeldt*, 469 Mich at 428 (describing third-party beneficiary status). In other words, as the Court of Claims correctly recognized, this case turns on whether Cass can show some type of promise that created a right to the healthcare savings funds to which he is asserting a claim. Because any such right would need to be found in the express terms of the MOU, see *id.*, resolution of this issue requires an interpretation of ¶ 4.B of the 2010 MOU. "When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning." *McCoig Materials*, 295 Mich App at 694. "If the language of the contract is clear and unambiguous, it must be enforced as written. A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation." *Id.* (citation omitted). Words and phrases are to be construed in context, and this Court may consult a dictionary in order to ascertain the plain and ordinary meaning of terms found in the document. *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). The fact that dictionary definitions reveal multiple meanings does not necessarily render a term ambiguous. *Henderson v State Farm Fire & Cas CO*, 460 Mich 348, 354-355; 596 NW2d 190 (1999). Rather, terms are to be interpreted in context. See *id.*; *Seils*, 310 Mich App at 145. See also *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 535 n 6; 676 NW2d 616 (2004) ("A word is not ambiguous merely because different dictionary definitions exist."). "A contract is ambiguous when, after considering the entire contract, its words may reasonably be understood in different ways." *Auto Owners Ins Co*, 310 Mich App at 146. Also, when interpreting a contract, this Court is to give effect to every word, phrase, and clause, and is to avoid an interpretation that would render any part of the contract nugatory or surplusage. *McCoig*, 295 Mich App at 694.

Cass claims a vested right in accumulated healthcare savings under ¶ 4.B of the 2010 MOU. As noted, ¶ 4.B capped MSU's healthcare costs at a 5 percent increase each year. As to whether healthcare costs increased by greater or less than 5 percent, the MOU provided:

> During the 2011-2012 plan year, employees represented by the Coalition shall pay on a monthly, pro rata basis (based on coverage elected) any amounts that exceed the annual 5% increase in the health plan cost.

> During any plan year covered by this agreement, any amount of health care plan increase less than 5% *shall accrue to the benefit of the employees represented by the Coalition as determined by the JHCC. In no case shall employees receive a cash payment or base wage increase as part of this paragraph.*

These amounts shall be calculated in the manner indicated in the approved worksheet. [Emphasis added.]

During each of the pertinent years, healthcare costs increased by less than 5 percent, resulting in an accumulation of over $7 million. It appears from the 2010 MOU, and Cass has not alleged otherwise, that this money came from MSU, not from any contributions made by employees.

Cass takes issue with the fact that the accumulated funds are being paid out, under the terms of the 2014 MOU, only to those employees who were employed after the expiration of the 2010 MOU, i.e., those employed on January 1, 2014, and January 1, 2015. He contends that because he would have had to pay for the increase in healthcare costs if that increase was above 5 percent, he should be entitled to any savings generated under ¶ 4.B.

Examining the pertinent contractual language as a whole, the Court of Claims did not err by determining that the meaning of ¶ 4.B was plain and unambiguous, and that it did not create in Cass any vested right to receive a payment from the healthcare savings fund. Contrary to Cass's contentions, the phrase "shall accrue," does not signify the creation of a vested right in the accumulated healthcare savings. Cass is correct in noting that the use of the word "shall" is generally understood to be a mandatory term. See, e.g., *Smitter v Thornapple Twp*, 494 Mich 121, 136; 833 NW2d 875 (2013). The word "accrue" is not defined in the contract, but is commonly defined in one of two ways. First, as Cass contends, it can be defined to mean "[t]o come into existence as an enforceable claim or right," *Black's Law Dictionary* (10th). See also *Meriam-Webster's Collegiate Dictionary* (11th ed) (defining the word "accrue" to mean "to come into existence as a legally enforceable claim"). However, the word "accrue" can also refer to something that accumulates or grows over time. *Black's Law Dictionary* (10th ed) (defining "accrue" to mean "[t]o accumulate periodically; to increase over a period of time"). See also *Meriam-Webster's College Dictionary* (11th ed) (defining "accrue" to mean "to come about as a natural growth, increase, or advantage," and to mean "to accumulate or be added periodically"). It is largely upon the word "accrue" that Cass hinges his argument, both in terms of contending that the 2010 MOU created in him a vested right to payment, and in advancing his alternative argument that the 2010 MOU is, at a minimum, ambiguous, given that there are multiple understandings of the word "accrue."

When the phrase "shall accrue" is read within the context of the entirety of ¶ 4.B, Cass's arguments are without merit. Immediately following the phrase indicating that a fund "shall accrue" to the benefit of Coalition-represented employees, is a grant of discretion to the JHCC with regard to the funds. That is, the 2010 MOU provides that the fund "shall accrue to the benefit of the employees represented by the Coalition as determined *by the JHCC*." As recognized by the Court of Claims, the identity of the employees represented by the Coalition was clear from the contract; the employees represented by the Coalition were those belonging to the unions expressly listed in the prelude to the 2010 MOU.[5] Thus, the discretion given to the

---

[5] In this regard, the 2010 MOU expressly states that the Coalition represents "regular employees represented by AFSCME, Local 999; AFSCME, Local 1585; Administrative Professional

JHCC in this passage is to make a determination about the money that "shall accrue" under ¶ 4.B. The discretion given to the JHCC tends to cut against the notion that the word "accrue" refers to the creation of a vested right, and lends credence to the idea that the word "accrue" was simply the accumulation of a fund, i.e., the accumulation of healthcare savings. Indeed, if the right were truly vested in the employees under the 2010 MOU, it would make little sense to give the JHCC discretion over the funds.

Furthermore, the next sentence in ¶ 4.B conclusively rejects the notion that any employee had a vested right in any accumulated healthcare savings. This sentence states, in no uncertain terms, that "[i]n no case shall employees receive a cash payment or base wage increase as part of this paragraph." The words "as part of this paragraph" referred to ¶ 4.B, which dealt with the savings fund at issue. Thus, the sentence provides that "[i]n no case," is an employee to receive a cash payment as part of the accumulated health care savings. When read in context, this places one limit on the discretion afforded to the JHCC: the JHCC can make a determination about any healthcare savings fund, but the JHCC cannot, in any case under the 2010 MOU, make a cash payment to any employee. This provision conclusively rejects the very thing Cass seeks in this case and defeats any idea of a "vested benefit" as claimed by Cass.

In sum, when ¶ 4.B of the 2010 MOU is read in its entirety, the paragraph is unambiguous and it does not create the vested right asserted by Cass.

Cass makes two efforts to avoid the effect of the express prohibition ¶ 4.B places on cash payments from accumulated healthcare savings funds. He first claims that the prohibition reflected the "idea" that the Coalition, in bargaining with MSU, was afraid that MSU would offer cash payouts from the accumulated funds in lieu of annual wage increases. This argument is entirely reliant on parol evidence—parol evidence, it must be noted, for which Cass provides no citation to the record and which simply consists of his own bald assertion. When a contract is unambiguous, as is the 2010 MOU in this case, parol evidence cannot be used to vary the plain meaning of the document. *Burkhardt v Bailey*, 260 Mich App 636, 656-657; 680 NW2d 453 (2004).

In a second attempt to avoid the effect of the prohibition against cash payments to employees, Cass argues that the 2010 MOU's inclusion of this prohibition proves the existence of a vested right in payment. To this end, Cass poses the question "[w]hy would there be a need to say that employees during 2010-2013 could not receive a cash payment from the health care savings fund if, as the Trial Court ruled, there was no accrued right to the savings fund?" This argument is meritless. Arguing that the express and unequivocal prohibition on a cash payment from accumulated funds somehow demonstrates a vested right to receive the very thing that is banned by the prohibition, i.e. a cash payment, requires a degree of mental gymnastics not supported by the plain language of the 2010 MOU.

---

Association, MEA/NEA; Administrative Professional Supervisors Association; Clerical Technical Union of MSU; Fraternal Order of Police Sergeant's Division, Lodge 141; Fraternal Order of Police Non-Supervisory Division, Lodge 141; IATSE, Local 274; and Operating Engineers, Local 324[.]"

Next, in support of his position, Cass takes issue with the fact that the 2014 MOU provides cash payouts for funds accumulated during the effective dates of the 2010 MOU. He claims the benefit that accrued from 2010-2013 should not be paid to those who were employed in 2014 and 2015, because that group of employees is not necessarily the same group of employees from 2010-2013. As noted, the 2010 MOU expressly prohibited cash payouts and did not create a vested right to receive any of the accumulated funds. Nothing prohibited MSU and the Coalition from making payments from the accumulated funds in the future under the 2014 MOU. See *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 412-413; 646 NW2d 170 (2002) (holding that parties to a contract are free to change contractual terms in the future). While Cass views this distribution as being unfair, he cannot escape the unambiguous language of the 2010 MOU, which this Court is tasked with enforcing as it is written. *McCoig Materials*, 295 Mich App at 694.[6]

### III. MSU'S CROSS-APPEAL

In light of or resolution of Cass's appeal, MSU's cross-appeal about the Court of Claims's subject-matter jurisdiction over the interpleader action is rendered moot. "As a general rule, an appellate court will not decide moot issues." *BP 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights. An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id.* (citation omitted). In this case, MSU filed the interpleader action with regard to the funds that accrued under the 2010 MOU and to which the Coalition (and the third-party defendants)—by way of the 2014 MOU—and Cass claimed an interest. As MSU, the Coalition, and the third-party defendants agree, there would no longer be any dispute over the funds if we affirm the Court of Claims' ruling regarding Cass's claim; because we do so, the interpleader action will have no effect on this case, thereby rendering moot any issue over whether the Court of Claims had subject-matter jurisdiction over the action. See *Auto Owners Ins Co*, 310 Mich App at 163 n 8 (declaring an issue moot if it has no effect on the outcome of the case). We need not decide this moot issue.

Affirmed.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Jane M. Beckering

---

[6] Finally, we note that although Cass's complaint raised claims in addition to his contract claim, his brief on appeal only makes an argument about the contract. He abandoned these other claims by failing to advance an argument on appeal. See *Houghton*, 256 Mich App at 339. Furthermore, because Cass's other claims were premised on his assertion that the 2010 MOU created some type of vested right, those claims are meritless.